United States District Court
Southern District of Texas
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APR 2 9 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DIRECTV, INC.,<br>       Plaintiff,<br><br>v.<br><br>JUAN CORONADO a/k/a JOE<br>CORONADO and JIMMIE<br>MORGAN,<br><br>       Defendants. | § § § § § § § § § § § § | CIVIL ACTION NO. B-03-053<br><br><br><br>JURY TRIAL DEMANDED |

## DEFENDANT, JIMMIE MORGAN'S,
## ORIGINAL ANSWER and COUNTERCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Jimmie Morgan ("Morgan"), who respectfully files this Original Answer and Counterclaim.

### ADMISSIONS AND DENIALS

#### Preliminary Statement

1.     **Paragraph 1.** Denied.  Morgan purchased standard electronic components useful for a wide variety of lawful purposes. He did not purchase them for himself but allowed someone else to use his credit card.  The components are not illegal. The components are not designed to intercept and decrypt protected satellite communications. Morgan never used any illegal device for any illegal purpose. Morgan never possessed any illegal

device. Morgan never viewed satellite television for free.  Morgan never distributed any illegal device.

**DIRECTV's Business Operations**

2.   **Paragraph 2.** Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

3.   **Paragraph 3.** Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph except for the final sentence which is denied. The primary basis of this dispute is DIRECTV is on a fishing expedition harassing the purchasers of standard electronic components based on a mere possibility that the standard electronic components were used for an unlawful purpose. Moreover, he did not purchase them for himself but allowed someone else to use his credit card.

4.   **Paragraph 4.** Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

5.   **Paragraph 5.** Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

6.   **Paragraph 6.** Denied except Morgan is a resident of Texas. Morgan never purchased or used any illegal pirate access device. He purchased standard electronic components useful for a wide variety of lawful purposes. He did not purchase them for himself but allowed someone else to use his credit card.   Morgan never purchased or used any device designed to permit viewing of DIRECTV's programming without authorization or payment to DIRECTV.

**DEFENDANT, JIMMIE MORGAN'S,
ORIGINAL ANSWER and COUNTERCLAIM**

2

## DIRECTV Obtained Evidence

7.    **Paragraph 7.** Morgan does not have sufficient information to form a belief as to the truth of most of this paragraph. However, Morgan denies that DIRECTV obtained evidence that he purchased an unlawful pirate access device. At most, it obtained evidence of his purchase of lawful standard electronic components usable for a wide variety of lawful purposes. He did not purchase them for himself but allowed someone else to use his credit card. Further, Morgan never possessed or used any pirate access device. Further, he never manufactured, assembled, or used any pirate access device. He merely purchased standard electronic components.

8.    **Paragraph 8.** Denied. Morgan did not violate any federal or state statute or common law. He merely purchased standard electronic components. Morgan never manufactured or assembled or obtained or possessed or purchased any unlawful pirate access device.

## Jurisdiction

9.    **Paragraph 9.** Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

10.    **Paragraphs 10-11.** Denied except subject matter jurisdiction and personal jurisdiction, are admitted. Morgan never violated any right of DIRECTV anywhere

## Venue

11.    **Paragraph 12.** Venue is admitted except Morgan never violated any right of DIRECTV anywhere.

## Parties

12.    **Paragraph 13.** Morgan is without knowledge or information sufficient to form a belief as

to the truth of this paragraph.

13.    **Paragraph 14.** Morgan does not have sufficient information to admit or deny the State

of Incorporation of DIRECTV and Morgan is without knowledge or information

sufficient to form a belief as to the truth of the remainder of this paragraph.

14.    **Paragraphs 15.** Morgan does not have sufficient information to admit or deny any of the

allegations relative to anyone else named as a defendant.

15.    **Paragraph 16.** Morgan admits that he resides in Ingleside, Texas. Denied that Morgan

purchased any Pirate Access Device. He purchased standard electronic components useful

for a wide variety of lawful purposes. He did not purchase them for himself but allowed

someone else to use his credit card.

16.    **Paragraph 17.** Morgan is without knowledge or information sufficient to form a belief

as to the truth of this paragraph.

17.    **Paragraph 18.** Denied. Morgan did not import any illegal device. He merely purchased

standard electronic components useful for a wide variety of lawful purposes. He did not

purchase them for himself but allowed someone else to use his credit card. Morgan never

viewed DIRECTV programming without authorization or without payment. Morgan was

never capable of viewing DIRECTV programming without authorization or without

payment.

18.    **Paragraph 19-20.** Denied. Morgan did not import any illegal device. He merely

purchased standard electronic components useful for a wide variety of lawful purposes.

He did not purchase them for himself but allowed someone else to use his credit card.

Morgan never viewed DIRECTV programming without authorization or without

DEFENDANT, JIMMIE MORGAN'S,
ORIGINAL ANSWER and COUNTERCLAIM

4

payment. Morgan was never capable of viewing DIRECTV programming without authorization or without payment. Morgan never engaged in an enterprise to distribute or resell illegal pirate devices whether for profit or not. He never even possessed such a device.

**Discovery**

19.    **Paragraph 21.** Denied. DIRECTV never discovered Morgan's involvement in pirating Satellite Programming because he is not now and never was involved in that. He merely purchased completely lawful standard electronic components. He did not purchase them for himself but allowed someone else to use his credit card.

**47 U.S.C. § 605 (e)(3)(c)**

20.    **Paragraph 22.** Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

21.    **Paragraph 23.** Denied. Morgan did not effect unauthorized interception and receipt of Satellite Programming through the use of an illegal satellite decoding device or otherwise.

22.    **Paragraph 24.** Denied. Morgan did not violate federal law. Morgan did not intercept, receive, or exhibit DIRECTV without authorization. Morgan did not publish or divulge the existence, substance, or the contents of DIRECTV programming without authorization. Morgan did not use DIRECTV programming for his own benefit or the benefit of others without authorization.

23.    **Paragraphs 25-27.** Denied.  In general, Morgan did not intercept or receive DIRECTV's programming without authorization. He did not assemble a device primarily of assistance in unauthorized decryption of satellite programming. Thus, he did not violate 47 U.S.C.

605.

**18 U.S.C. § 2511**

24.    **Paragraph 28.** Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

25.    **Paragraphs 29-31.** Denied. Morgan did not intercept, endeavor to intercept, or procure other persons to intercept electronic communications. He did not disclose or endeavor to disclose to others the contents of intercepted electronic communications. He did not use or endeavor to use intercepted communications. Further, the statute does not apply in some respects as DIRECTV asserts because the statute in some respects is limited to "oral" communications.

**18 U.S.C. § 2512**

26.    **Paragraph 32.** Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

27.    **Paragraphs 33-35.** Denied. Morgan did not assemble or possess any device primarily useful for surreptitious interception of DIRECTV's programming. Morgan did not assemble a device capable of doing that.

**47 U.S.C. § 605(e)(4)**

28.    **Paragraph 36.** Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

29.    **Paragraphs 37-39.** Denied. Morgan did not assemble or possess any device primarily useful for surreptitious interception of DIRECTV's programming. Morgan did not assemble a device capable of doing that.

## Civil Conversion

30.    **Paragraph 40.** Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

31.    **Paragraphs 41–43.** Denied. Morgan never viewed DIRECTV programming without authorization. He did not convert anything.

## Tex. Civ. P. Rem. Code 123.001, *et seq.*

32.    **Paragraph 44.**    Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

33.    **Paragraphs 45–46.** Denied. Morgan did not intercept or attempt to intercept DIRECTV's programming.

## Injunction

34.    **Paragraph 47.**    Morgan is without knowledge or information sufficient to form a belief as to the truth of this paragraph.

35.    **Paragraphs 48–51.** Denied. There has been no illegal conduct to restrain. There is no showing of imminent irreparable injury or even any probability at all of illegal conduct to restrain.

## GENERAL DENIAL

36.    Morgan denies all allegations alleged in the complaint unless specifically admitted.

## FAILURE TO STATE A CLAIM

37.    DIRECTV failed to state a claim against Morgan for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## AFFIRMATIVE DEFENSES

38.   Even if DIRECTV proves the allegations in its complaint, Morgan is not liable to

DIRECTV because of duress, estoppel, fraud, illegality, and/or the statute of limitations

has run on DIRECTV's claims.

## SEVERANCE

39.   DIRECTV's lawsuit alleges various violations against several different defendants.

DIRECTV's joinder on non-similar defendants greatly prejudices Morgan's right to a fair

trial.

## IMPROPER SERVICE

40.   DIRECTV failed to effect proper service on Morgan pursuant to both the Federal and

Texas Rules of Civil Procedure.

## COUNTERCLAIMS

**Factual Background and Claims**

41.   Morgan has on more than one occasion been working on his computer when an

advertisement for DIRECTV appeared or "popped up" on his screen without his consent

or request. This consumes computer resources and more importantly the time of the

computer user to delete the unauthorized "pop up." No consent was ever given to these

pop-up advertisements whether express or implicit.

**Trespass**

42.   This amounts to an unauthorized "trespass" on the computer. *See America Online vs.

IMS*, 46 F.Supp. 444 (E.D. Va. October 29, 1998) (Court awards AOL summary

judgment against a spammer finding that the sending of unauthorized junk e-mail to AOL

subscribers constituted an actionable trespass to AOL's computer network); *CompuServe Incorporated v. Cyber Promotions, Inc. and Sanford Wallace*, Case No. C2-96-1070 (S.D. Ohio, Feb. 3, 1997)(Graham, J.) ( Court issued preliminary injunction enjoining the defendants from sending unsolicited advertisements via e-mail to any CompuServe subscribers. The court held that by sending junk e-mail, DIRECTV had committed the tort of trespass on personal property by utilizing without permission the computer system which supports CompuServe's e-mail facilities).

43.     On information and belief, DIRECTV commits this trespass through a third-party service provider not directly. However, DIRECTV knows what its agent is doing and thus is responsible for the spam by its agent. Morgan is entitled to actual and exemplary damages.

## Violation of 18 U.S.C. §1030

44.     Further, DIRECTV violated 18 U.S.C. §1030. Morgan's computer is a "protected" computer in that it is used in interstate commerce and communication. 18 U.S.C. §1030)(e)(2)(B). DIRECTV knowingly and with intent to defraud accessed this protected computer without authorization or exceeded authorized access and by means of such access defrauded him by appropriating his time and attention without authorization and use of his computer resources.

45.     As a result, Morgan has suffered loss. DIRECTV intentionally accessed a protected computer without authorization and as a result recklessly caused damage. 18 U.S.C. §1030(a)(5)(ii). Morgan has a private right of action. 18 U.S.C. §1030(g) for damages and "loss." Further, he has an action for injunctive and other equitable relief. Each pop-up

causes distraction of work in process and attention. Morgan is entitled to recover his attorneys' fees.

46.    Even computer users who have successfully installed an effective "popup killer" program are damaged by illegal popups, because they have generally spent money for the "popup killer" program and have always expended time and effect directly or indirectly to find and install the "popup killer" program. Further, the "popup killer" program consumes computer resources.

**Unfair Competition**

47.    Commencing prior to June 1, 2001, but continuing on that date and continuing thereafter, DIRECTV has engaged in, is engaged in, and proposes to engage in the Texas common law tort of unfair competition which includes any "unlawful, unfair or fraudulent business act or practice," "unfair, deceptive, untrue or misleading advertising," and any other act prohibited by Texas law.

48.    DIRECTV is the nation's leading direct broadcast satellite system, delivering over 225 channels of television and other programming to more than 10 million homes and businesses in the United States.

49.    DIRECTV encrypts—electronically scrambles—its satellite transmissions to prevent unauthorized viewing of its satellite television programming.  DIRECTV offers its television programming to residential customers on a subscription and pay-per-view basis only.  Each customer is required to obtain a DIRECTV access card and other system hardware including a small satellite dish and to create an account with DIRECTV.  Upon activation of the access card by DIRECTV, the customer can receive and view in

decrypted (unscrambled) format those channels to which the customer has subscribed or otherwise made arrangement to purchase from DIRECTV.

50.    In the past several years, DIRECTV came into possession of various business records of companies which DIRECTV suspected had been involved in selling lawful, noncontraband, electronic devices and hardware that could, under certain circumstances and conditions, be used by a person with sufficient expertise to receive unauthorized satellite transmissions. DIRECTV calls persons who use such devices and hardware to receive unauthorized satellite transmissions "pirates." These records contained names and addresses of persons who were listed as the recipients of these devices and hardware. These individuals are consumers or "end-users" as DIRECTV would call them.

51.    Rather than investigating whether the persons identified in the business records had 1) actually received the hardware and 2) used it in some illegal or improper fashion as a "pirate," DIRECTV originated, developed and implemented a policy, practice and scheme by which their agents, law firms and collection agencies, would send a series of form "Demand Letters" to all persons whose names had been found in the business records. The Demand Letters were drafted in-house by DIRECTV and modified only slightly by the agents who sent the Letters.

52.    The purpose of this scheme was to intimidate and coerce said persons into forfeiting said equipment and to extort a sum of money payable to DIRECTV and its agents.  The further goal of this scheme was to deter any person from purchasing similar equipment in the future, regardless of their intentions and use for such hardware.  DIRECTV expressly stated its goal was to send out at least 100,000 Demand Letters.

DEFENDANT, JIMMIE MORGAN'S,<br>ORIGINAL ANSWER and COUNTERCLAIM<br>11

53.    In order to meet this goal, DIRECTV determined that it was not feasible to actually investigate the merits of the piracy allegations against individuals prior to sending the Demand Letters to them.  Accordingly, DIRECTV did not attempt to contact these persons to inquire as to the purpose for their suspected purchase and did not attempt to determine if the person currently had or ever had a DIRECTV satellite system. Moreover, in the threatening Demand Letters, DIRECTV did not request an explanation or express an interest in receiving an explanation from the consumer as to the reasons for his or her possession of the devices or hardware.

54.    In order to implement this scheme, DIRECTV utilized the services of several collection agencies and law firms to act as its agents in sending the Demand Letters and handling communications with the recipients.  These agents include Greer, Herz & Adams, L.L.P.

55.    Since DIRECTV implemented this strategy in mid-2001, DIRECTV  has sent out an estimated 50,000 to 100,000 form Demand Letters.

56.    The form Demand Letters typically were and are of two variants.  The first variant, or Initial Demand Letter, typically contained and still contains the following common elements:

   a.  An introduction confirming that the sender was acting as the agent of DIRECTV, Inc.

   b.  Repeated accusations that the recipient has committed "illegal" and "unlawful" activities and "theft," backed up with several references to federal laws, which make it illegal to engage in certain conduct attributed to the recipient.  The implication of the Letters is that the recipient could face civil and criminal

prosecution as a result of this conduct. However, at the time DIRECTV sent the letters, DIRECTV possessed no business records or other evidence indicating that the recipient had viewed unauthorized DIRECTV satellite programming and was committing theft or had attempted to commit theft.

c.  A purported factual assertion that the sender possessed business records that established the recipient had purchased or acquired illegal signal theft equipment. However, the Letters do not specifically describe or identify what equipment the recipient possesses which is supposedly illegal signal theft equipment. In fact, none of the actual pieces of equipment, which are the subject of these Demand Letters, are contraband or illegal items. At most, they are pieces of hardware that have many innocent uses, but which under certain circumstances and if certain other conditions are met, *could* (in knowledgeable hands) be used to receive unauthorized satellite transmissions. Moreover, the business records are comprised of mailing lists and shipping records seized under hostile and unreliable conditions from third parties which, at the time DIRECTV sent the letters, had not been corroborated or authenticated in any way.

d.  A purported factual assertion that the recipient had purchased or acquired the signal theft equipment to gain unauthorized access to DIRECTV's programming. However, the Letters do not specify whether the recipient is or was a DIRECTV subscriber. In fact, the Letters were sent to many recipients who never owned a DIRECTV system and, therefore, could not possibly have received unauthorized transmissions even with the "signal theft equipment" DIRECTV accused them of

**DEFENDANT, JIMMIE MORGAN'S,**
**ORIGINAL ANSWER and COUNTERCLAIM**

13

purchasing.  The items in question would have been as useless to a recipient who lacked a satellite dish as a shoe to a man without a matching foot.

e.  A purported factual assertion that the recipient had modified devices to illegally gain access to DIRECTV's programming.  However, at the time DIRECTV sent the letters, it did not actually know whether the recipients had modified the devices or not as they had never seen the devices in question and knew nothing about the capabilities of the recipients to make such modifications.

f.  A list of demands which either must be met in timely fashion, or a lawsuit would be filed against the recipient within 14 days or some other specified short period of time.  The Letters flatly state that after this period of time, DIRECTV will "initiate legal proceedings in the federal district court" and "abandon its attempts to negotiate."  The list of demands includes payment of an unspecified sum of money, forfeiture of property and a promise never to acquire similar property in the future.

g.  The threat that if the recipient does not settle, DIRECTV will seek and be entitled to recover monetary damages of $100,000 or more from the recipient, and implication that the recipient could be criminally prosecuted since the statutes cited are criminal laws.

57.  Morgan  received at least one Demand Letter that contained the foregoing elements.

58.  Many of the statements contained in these Demand Letters are false, misleading or deceptive for numerous reasons, including those set forth above.  Moreover, in making the claims set forth in the Demand Letters, DIRECTV had knowledge of the falsity of the

claims and made them with a reckless and conscious disregard for the truth.

59.    The second variant, or Secondary Demand Letter, was sent several weeks to several months after the Initial Demand Letter, and typically reiterated the accusations that the recipient had purchased illegal signal theft equipment, and flatly stated that unless the recipient contacted the sender within ten days a lawsuit would be filed based upon a draft complaint that was sent to the recipient.

60.    This Secondary Demand Letter contains the same type of false, misleading or deceptive statements as are present in the Initial Demand Letter, plus the false implication that a lawsuit would be filed immediately after ten days.

61.    At the time each of these Demand Letters was issued to Morgan and others and at the time similar Letters, DIRECTV did not have a serious and good faith intent to pursue imminent litigation against the recipients for two reasons. First, in the vast majority of cases, DIRECTV did not actually have documentary evidence that Morgan and others were in possession of illegal signal theft equipment; instead, the Letters were merely a tactical ploy to induce a settlement. DIRECTV gambled, correctly as it turned out, that a substantial percentage of the recipients, as unsophisticated consumers, would submit to DIRECTV's demands due to confusion over the intimidating allegations and factual misrepresentations contained in the Letters, as well as financial inability to defend themselves against the draconian penalties threatened by DIRECTV. Secondly, due to the sheer number of Demand Letters issued, DIRECTV could not possibly hope to file lawsuits in the near future against more than a miniscule percentage of the recipients and certainly could not sue every recipient in the event a settlement was not forthcoming. As

it turns out, DIRECTV has only sued a small percentage of the recipients who failed to settle and have settled with a substantial percentage of the recipients. Suing a small fraction of the thousands of persons who were sent the Letters does not constitute a serious and good faith intent to pursue imminent litigation.

62.    The conduct of DIRECTV as set forth above with respect to members of the general public and specifically recipients of the Demand Letters was an "unlawful" business act or practice within the meaning of the unfair competition laws because in sending the Letters DIRECTV violated Texas Penal Code section 32.48 (simulating legal process) and other laws including extortion and attempted extortion and comparable federal statutes relating to extortion—18 USC sections 875, 876 and 1951—and mail and wire fraud, 18 USC sections 1341 and 1343.

63.    The conduct of DIRECTV as set forth above with respect to members of the general public and specifically recipients of the Demand Letters was a "fraudulent" business act or practice and deceptive or misleading advertisement within the meaning of the relevant laws because the Demand Letters contained statements which were capable of deceiving or had a tendency to deceive the recipients.

64.    The conduct of DIRECTV as set forth above with respect to members of the general public and specifically recipients of the Demand Letters was an "unfair" business act or practice. The fairness of business conduct is determined by weighing the practice's impact on consumers and members of the general public against the business justification for the conduct. Here, DIRECTV's legitimate concerns about piracy of satellite transmissions does not come close to justifying their carpet-bombing, collateral-damage-

ignoring, heavy-handed campaign of intimidation and extortion, accusing thousands of innocent persons on the possibility a few guilty persons may be uncovered. Using DIRECTV's logic, the record companies should send a similar demand letter to every person in the United States who owns a CD-burner and one or more commercial CD's because that person has the necessary equipment to make unauthorized copies of commercial music.

65.  In engaging in conduct that constitutes unfair competition, DIRECTV has acquired money or property from members of the general public. Specifically, DIRECTV has acquired the money paid by recipients of the Demand Letters and the value of property forfeited by those persons.

66.  The aforementioned business practices of DIRECTV is likely to continue and therefore will continue to violate the law and deceive the public unless this court enjoins them

## Intentional Infliction of Emotional Distress

68.  DIRECTV, Inc. intentionally or recklessly sent extremely harassing and disturbing letters to Morgan falsely accusing him of crimes and threatening him so that he would be afraid and send thousands of dollars to DIRECTV. DIRECTV's conduct was extreme and outrageous and proximately caused Morgan severe emotional distress. Morgan suffered damages for which Morgan herein sues.

## Libel/Defamation/Slander

69.  DIRECTV with actual malice published a false statement of fact referring to Morgan which injured Morgan's reputation, impeached Morgan's honesty, injured Morgan's business reputation and imputed a crime against Morgan. Morgan suffered damages for which

Morgan herein sues.

**Negligence**

70.    DIRECTV, Inc. owed a legal duty to Morgan.  DIRECTV breached this duty which proximately caused injury to Morgan.  Morgan seeks all available damages for injuries caused by DIRECTV's negligence.

DAMAGES

71.    Morgan sustained the following damages as a result of the actions and/or omissions of DIRECTV described hereinabove:

      a.    The Court should deny DIRECTV damages;

      b.    The Court should grant actual and exemplary damages for trespass and for violation of 18 U.S.C. § 1030;

      c.    All reasonable and necessary attorney's fees incurred by or on behalf of Morgan;

      d.    All reasonable and necessary costs incurred in pursuit of this suit;

      e.    Expert fees as the Court deems appropriate;

      f.    Inconvenience;

      g.    Prejudgment interest;

      h.    Mental anguish in the past;

      i.    Mental anguish in the future;

      j.    Statutory damages;

      k.    Compensatory damages; and

      l.    Any and all other relief, equitable or otherwise, that the Court deems

DEFENDANT, JIMMIE MORGAN'S,<br>ORIGINAL ANSWER and COUNTERCLAIM

18

appropriate.

## EXEMPLARY DAMAGES

72.    Morgan would further show that the acts and omissions of DIRECTV complained of herein were committed with malice or reckless indifference to the protected rights of the Morgan. In order to punish DIRECTV for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Morgan also seeks recovery from DIRECTV for exemplary damages.

## <ins>REQUEST FOR JURY TRIAL</ins>

73.    Morgan requests a trial by jury.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Jimmie Morgan, respectfully prays , and that upon a final hearing of the cause, judgment be entered for the Morgan against DIRECTV for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Morgan may be entitled at law or in equity.

**DEFENDANT, JIMMIE MORGAN'S,**
**ORIGINAL ANSWER and COUNTERCLAIM**

Respectfully submitted,

Law Offices of Peggy S. Bittick

By: _____

Peggy S. Bittick
Texas Bar No. 00793346
Southern District Bar No: 19251
One Themis Place
2400 South Texas Avenue
Pearland, Texas 77581
Tel. (281)485-3500
Fax. (281)485-0171
Attorney-in-Charge for Defendant
Jimmie Morgan

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument was served as follows, pursuant to the Federal Rules of Civil Procedure, on April 25, 2003:

Robert A. Swofford
Greer, Herz & Adams L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550
*Via CMRRR # 7002 2410 0006 9295 7969*

_____

Peggy S. Bittick

**DEFENDANT, JIMMIE MORGAN'S,
ORIGINAL ANSWER and COUNTERCLAIM**

20